# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

### UNITED STATES

**v.**

### Darin D. McCLARY
### Airman (E-3), U.S. Coast Guard

### CGCMS 24400

### Docket No. 1312

### 19 January 2010

Special Court-Martial convened by Commanding Officer, Coast Guard Air Station Detroit. Tried at Selfridge, Michigan, on 3-6 March 2008.

| | |
|---|---|
| Military Judge: | CDR Benes Z. Aldana, USCG |
| Trial Counsel: | LCDR Amy E. Kovac, USCG |
| Assistant Trial Counsel: | LCDR Matthew W. Merriman, USCG |
| Defense Counsel: | LT Jeremy Brooks, JAGC, USN |
| Appellate Government Counsel: | LCDR Brian K. Koshulsky, USCG |
| | LT Emily P. Reuter, USCG |
| Appellate Defense Counsel: | CDR Necia L. Chambliss, USCGR |
| | LCDR Rachael B. Bralliar, USCGR |

### BEFORE
### McCLELLAND, KENNEY & CHANEY
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by special court-martial composed of members. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of conspiracy to make a false official statement, in violation of Article 81, Uniform Code of Military Justice (UCMJ); and six specifications of signing false official records and two specifications of making false official statements, in violation of Article 107, UCMJ. Contrary to his pleas, Appellant was also convicted of two specifications of assault and battery, in violation of Article 128, UCMJ. The panel sentenced Appellant to confinement for four months,

reduction to E-1, and a bad-conduct discharge. The Convening Authority approved the sentence as adjudged.

Before this court, Appellant has assigned the following errors:

I. Appellant's plea to conspiracy to commit a false official statement is improvident.

II. Trial counsel's argument was improper and materially prejudiced Appellant's substantial rights.

III. Whether Appellant received a just and fair trial with all of its attendant due process rights is in question because questions by the members went unanswered.

IV. The Convening Authority erred when he failed to provide a written reason for denying Appellant's request for deferment of confinement.

We heard oral argument on the first two issues on 9 December 2009.[1]

We reject the third issue summarily. We discuss the other issues, reverse the conspiracy conviction, and affirm the sentence.

**Facts concerning conspiracy**

Appellant was charged with conspiring with his girlfriend, JF, to commit false official statements. The overt act was alleged to be that he and JF "did present to Coast Guard officials a marriage certificate which was totally false and then known by [Appellant and JF] to be so false." He was also charged with six specifications of false official statements for signing various official records, such as a DEERS enrollment form, dependency documents, and the like, that listed JF as the wife of Appellant; as well as two specifications of false official statements for making oral statements concerning his marriage to JF and their shared residence. He pleaded guilty to all of these charges and specifications.

---

[1] Appellant's first assignment of error in full was: Appellant's plea to conspiracy to commit a false official statement is improvident because the judge elicited facts that were in substantial conflict with the guilty plea. The issue we specified expanded on Appellant's assignment: Whether Appellant's plea to conspiracy to commit the offense of false official statements was improvident, either because the judge elicited an insufficient factual basis or facts that were in substantial conflict with the guilty plea, or because the conduct contemplated by the conspiracy as established in the providence inquiry did not constitute the offense of false official statements in light of *United States v. Teffeau*, 58 M.J. 62 (C.A.A.F. 2003), and *United States v. Caballero*, 65 M.J. 674 (C.G.Ct.Crim.App. 2007).

The providence inquiry reveals the facts underlying the conspiracy charge, according to Appellant. He and JF obtained a marriage license and intended to get married. The marriage license and marriage certificate are a single document, the top of which is the license and the bottom of which is the certificate, to be filled out by someone authorized to perform marriage ceremonies, along with two witnesses. Because of perceived obstacles to having a marriage ceremony, they decided to fill out the marriage certificate themselves. Appellant signed the name of a fictitious clergyman, and he and JF signed the names of two witnesses. (R. at 41-46, 58.)

Appellant stated that he and JF agreed to do this, and in fact did it. (R. at 47-48, 58.) He further stated that he and JF agreed to and did present the false marriage certificate to the Coast Guard. (R. at 58.)

The military judge stated the elements of conspiracy. (R. at 39-40, 56.) He described the underlying offense as being that Appellant and JF "did present" or "presented" a marriage certificate to Coast Guard officials, that the marriage certificate was totally false, that "you" knew it to be false at the time "you" signed it, and that it was made with the intent to deceive. (R. at 47, 51, 59.) He also defined "intent to deceive." (R. at 48.) Appellant then admitted that the elements correctly described what "you" did. (R. at 62.) He was never asked and never said explicitly that, as part of the agreement, JF intended to deceive. Although he admitted that an intent to deceive was present, he did not say who had that intent; he never admitted that both he and JF had the intent to deceive. At an earlier point the military judge asked if there was an agreement, "'Hey, you know, let's tell the Coast Guard we're married,' so that she can have benefits, or enroll in DEERS?" (R. at 54-55.) The answer as to JF was negative at that point. (R. at 55.) After discussion of later events in which JF participated, the concluding admission that the elements correctly described what was done was ambiguous as to whether it included JF's intent. It may fairly be said that Appellant admitted his own intent to deceive, but he did not admit JF's intent to deceive.

In the course of the providence inquiry, the term "official" was never discussed at all. When the military judge asked if Appellant believed and admitted that he had entered into an agreement with JF to commit false official statements, he answered, "Yes, your Honor, if by, 'false official statement,' you mean the wedding certificate." (R. at 51.) This exchange was repeated in essence shortly thereafter. (R. at 53.)

It is clear that, to the participants in the providence inquiry, the false official statement contemplated by the conspiracy was the marriage certificate. However, the official nature of the marriage certificate was not addressed.

### Providence of conspiracy plea

Appellant argues that the guilty plea to conspiracy was improvident for several reasons. First, Appellant described an agreement with JF to falsely complete the marriage certificate, but not to present it to the Coast Guard, which did not support a conspiracy. After a recess, he went on to describe a later presentation to the Coast Guard in which JF joined, which did tend to support a conspiracy, but he was initially uncertain about some of the details. In the end, the military judge elicited necessary support for the plea by asking leading questions to which Appellant answered affirmatively. This means, Appellant complains, that critical support for the plea was not in Appellant's own words. Appellant further complains that the terms or substance of the agreement went undeveloped.

Appellant also asserts that JF's intent to deceive was not established.

Concerning the additional issue we specified for oral argument, Appellant's counsel asserted at oral argument that the false marriage certificate is not a false official statement.

The legal standard for determining whether a guilty plea is provident is whether the record presents a substantial basis in law or fact for questioning it. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991); *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). The record must contain a sufficient factual basis to support the plea. Manual for Courts-Martial (MCM), United States (2005 ed.), Rule for Courts-Martial (R.C.M.) 910(e). The accused must

believe and admit every element of the offense. *United States v. Whiteside*, 59 M.J. 903, 906 (C.G.Ct.Crim.App. 2004) (citing R.C.M. 910(e) Discussion). A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea. *Inabinette*, 66 M.J. at 322. Also, a ruling based on an erroneous view of the law constitutes an abuse of discretion. *Id*.

The elements of conspiracy are:

(1) That the accused entered into an agreement with one or more persons to commit an offense under the code; and

(2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.

MCM, Pt. IV, ¶ 5b.

The first element contains within it the requirement that each co-conspirator share the intention to commit an offense, including each element of the offense to be committed. In this case, the offense to be committed was false official statements. The elements of that offense are:

(1) That the accused signed a certain official document or made a certain official statement;

(2) That the document or statement was false in certain particulars;

(3) That the accused knew it to be false at the time of signing it or making it; and

(4) That the false document or statement was made with the intent to deceive.

MCM, Pt. IV, ¶ 31b.

Official statements "include all . . . statements made in the line of duty." MCM, Pt. IV, ¶ 31.c(1). Not every false statement by a service member rises to the level of a false official statement, as the circumstances surrounding the making of a statement assist in determining whether the servicemember was in the line of duty while making the statement. *See United States v. Teffeau*, 58 M.J. 62 (C.A.A.F. 2003). Further, false official statements are not limited to line-of-duty statements. A statement or document may be "made outside of a servicemember's

5

particular duties [yet] nonetheless implicate official military functions, and thus the proscription against false official statements." *United States v. Day*, 66 M.J. 172, 174 (C.A.A.F. 2008).

We find no merit in Appellant's arguments that his initial uncertainty about details, lack of details about the agreement, and form of questions and answers render his plea improvident. [2] These points do not constitute a substantial basis in law or fact for questioning the plea.

As to the intent to deceive, the Government's brief argues that JF's intent to deceive may reasonably be inferred from her actions. This may be true as to the factual basis, but it does not address the requirement for Appellant to believe and admit the elements of the offense. At oral argument, government counsel continued to argue that the providence inquiry met this requirement by inference. This argument would eviscerate the requirement for an accused to admit each element of the offense, and we reject it. Appellant did not admit that JF shared his intent to deceive.[3] Accordingly, the providence of his plea to conspiracy is not fully established.

Was the false marriage certificate a false official statement? The Government argues that because the status of being married invokes various rights and responsibilities, including the right to enroll in DEERS and obtain medical benefits, commissary privileges, and other benefits, a marriage certificate is an official document within Article 107. Indeed, the Government asserts that even if the marriage certificate completed by Appellant had never been presented to the Coast Guard, it would provide a basis for a charge of false official statement.[4]

There is nothing about a marriage certificate in itself that relates to a servicemember's duties or any official military function.[5] In our view, it is not until such a certificate is presented

---

[2] At oral argument, counsel cited *United States v. Caballero*, 65 M.J. 674 (C.G.Ct.Crim.App. 2007) for the proposition that conclusory responses to closed-ended questions are insufficient to support providence of a plea. It is true that certain conclusory responses to closed-ended questions in *Caballero* were insufficient in that case, but *Caballero* provides no basis for the general proposition. See *United States v. Nance*, 67 M.J. 362 (C.A.A.F. 2009).

[3] Appellant did not explicitly admit his own intent to deceive, but, as noted above, we believe it is fair to say that he admitted it by acknowledging the elements including intent to deceive, and admitting that the elements correctly described events. However, to conclude that both he and JF intended to deceive stretches his admission too far.

[4] This assertion was made in the context of the argument that the agreement need not have contemplated presentation of the marriage certificate to the Coast Guard in order to provide a basis for the conspiracy charge.

[5] We can ascertain no support for and reject the Government's argument that an "inchoate" false statement is punishable under the UCMJ.

to the military with the statement (explicit or implicit), "This is my marriage certificate, providing a basis for the benefits that accrue to married status," that there is any relationship to a military function. In that event, it is the statement, "This is my marriage certificate," that is the official statement, not the marriage certificate itself.[6]

It appears that the military judge viewed the marriage certificate and its presentation to the Coast Guard as a sufficient and obvious basis for the offense of "false official statements." We do not share that view. We conclude that the military judge's failure to define the term "official" or discuss the official nature of the marriage certificate with Appellant and his failure to elicit an admission that Appellant had made some statement other than the marriage certificate itself fatally flawed the providence inquiry. *See Caballero*, 65 M.J. 674 (C.G.Ct.Crim.App. 2007); *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (a provident plea requires an accused's understanding of how the law relates to the facts).

Given the defect as to his co-conspirator's intent to deceive and the omission as to the official nature of the marriage certificate, the conspiracy conviction must be set aside. We are certain that without the conspiracy charge, the court members would have arrived at the same sentence.

**Trial counsel's argument**

In addition to the conspiracy and false official statement charges, Appellant was charged with two specifications of assault on two different women. The incidents furnishing the basis for the assault specifications involved another girlfriend, SH, in December 2006, and JF in October 2007. Appellant pleaded not guilty to these specifications, and they were tried before members.

Appellant points to five aspects of the Government's closing argument, and some corresponding content of both opening argument and testimony, which were not objected to but which he claims were improper and prejudicial, constituting plain error.

---

[6] Whether an implicit, i.e. unspoken, statement could be a sufficient basis for a finding of guilt of false official statement is an open question. Surely the surrounding circumstances would have to be closely examined, which did not occur in this case.

The standard for determining the appropriateness of an argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused. *United States v. Baer,* 53 M.J. 235, 237 (C.A.A.F. 2000). Where the defense fails to object to an argument, the court will grant relief for an improper argument only if it amounts to plain error. *United States v. Gilley,* 56 M.J. 113, 123 (C.A.A.F. 2001). To establish plain error, the appellant must show (1) that there was error, (2) that the error was plain or obvious, and (3) that the error materially prejudiced one of Appellant's substantial rights. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005). Plain error analysis is not required where an appellant intentionally waives a known right at trial. *See United States v. Gladue*, 67 M.J. 311 (C.A.A.F. 2009).[7]

One of the Government's witnesses, SH, testified that during an argument between Appellant and her, he put his hands around her neck and threw her to the floor, breaking a coffee table. He then straddled her with his hands remaining over her neck. This continued for thirty to forty seconds, she testified. After the assault ended, she got up and angrily stomped on the coffee table, breaking it further and gashing her leg. She sought to go to the hospital, but Appellant declined to take her and she finally drove herself there. (R. at 318-24.) The Government included the matter of Appellant's refusal to take SH to the hospital in opening and closing argument. (R. at 269, 372.) Appellant now argues that this matter was irrelevant and therefore the military judge erred in admitting the evidence and allowing any argument concerning it. We find that as it was arguably part of the incident, error, if any, was not plain or obvious.

During their closing arguments, assistant trial counsel initially and trial counsel on rebuttal asserted that SH and JF testified truthfully, and used the word "clearly" five times in asserting that the Government had proven the elements of both assaults. Appellant now complains that this constituted impermissible personal opinion regarding the veracity of government witnesses, citing R.C.M. 919(b) Discussion, *United States v. Horn*, 9 M.J. 429, 430 (C.M.A. 1980), and *United States v. Fletcher*, 62 M.J. 175 (C.A.A.F. 2005). In *Horn*, the

---

[7] At a federal Court of Appeals, plain error analysis of an intentionally waived issue is not available at all, "because a valid waiver leaves no error for us to correct on appeal." *United States v. Campos*, 67 M.J. 330 (C.A.A.F. 2009) quoting *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005). However, under Article 66(c), UCMJ, this Court may entertain an issue despite waiver.

prosecutor repeatedly included the phrase "I think" in his opening and closing arguments; the court condemned the tone of the argument, but found no prejudice. In *Fletcher*, the prosecutor repeatedly called the evidence of guilt "clear," "unassailable," "a perfect litigation package," and the like, while denigrating the defense as "unbelievable" and "phony," and disparaging defense counsel, among other improper behavior. This case does not resemble the cited cases, except for use of the word "clearly." Moreover, the Government's argument was directly responsive to Appellant's defense, which sought to undermine the witnesses' credibility. We find nothing improper in the Government's argument urging the court to believe the witnesses.

The Government's closing argument included an invitation to the court members to put themselves in SH's place while being choked: "Now, just think if someone were squeezing your neck, you know, count One-Mississippi, Two-Mississippi, Three-Mississippi, you're having trouble breathing . . ." Appellant asserts that this was impermissibly inflammatory. The Government concedes the error, but denies that it materially prejudiced a substantial right. We agree with the Government. The error was not significant in the context of the whole argument. Furthermore, we are confident that it did not affect the verdict of the court members.

Appellant also claims that a Government invocation of protection of JF's son, implying that Appellant was a danger to his son, was inflammatory, improper, and prejudicial. We do not see it as inflammatory or prejudicial. If it was error, it was *de minimis*.

The Government's closing argument emphasized the similarities between the two assaults, urging the members to find them credible because of their similarities. The military judge *sua sponte* proposed corrective action, both sides concurred in the proposed action, and the military judge instructed the members accordingly. Appellant now claims that the corrective action was inadequate and also was not given immediately, further impairing its adequacy. Since defense counsel concurred in the corrective action, we are inclined to say that any error was intentionally waived.[8] Even if it was not, we find the military judge's corrective action was adequate to cure the improper argument.

---

[8] In fact, defense counsel used the Government's argument against the Government, arguing that the similarities in the specifications showed that the Government's prosecutorial judgment was clouded. (R. at 387-88, 390, 393.)

The Government's rebuttal argument, in urging the court members to believe the two witnesses, included the following: "There was nobody else there. There's no one else to call in. You have to take it on the testimony that was provided." Appellant now complains that the Government thereby impermissibly commented on Appellant's failure to testify. Assuming without deciding that these comments would naturally have been understood by the members as a comment on Appellant's failure to testify, they were fair rebuttal to defense counsel's argument highlighting the weaknesses in the two witnesses' testimony and credibility. *See United States v. Moran*, 65 M.J. 178, 186 (C.A.A.F. 2007) (implication of an accused's assertion of rights may appropriately be made by trial counsel in rebuttal). We find no error, much less plain error. Further, we see the brief comments as having no impact in the context of the whole trial. *See Id.*; *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005); *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (trial counsel's argument must be viewed within the context of the entire court-martial). We see no reasonable possibility that the comments might have contributed to the conviction. We find that the comments were harmless beyond a reasonable doubt.

Finally, Appellant contends that the Government's errors in argument taken together justify setting aside the findings of guilty of assault. We disagree and conclude that no relief is warranted.

**Denial of deferment request**

Following the end of the trial on 6 March 2008, Appellant submitted a request to the Convening Authority requesting deferment of confinement "until at least Monday, March 10." The Convening Authority responded on the same date by writing, "Considered and denied," followed by his signature, directly on the written request. On 15 April 2008, the Convening Authority signed a memorandum addressed to Appellant, providing his reasons for the denial.

Appellant asserts that the initial lack of a written reason for the denial was error. The Government asserts that the provision of written reasons on 15 April 2008 means that there was no error. We disagree. Certainly there was error at the time of the denial. "When a convening authority acts on an accused's request for deferment of all or part of an adjudged sentence, the

action must be in writing (with a copy provided to the accused) and must include the reasons upon which the action is based." *United States v. Sloan*, 35 M.J. 4, 7 (C.M.A. 1992). In short, the required written denial must include the reasons. In this case, the written denial did not include the reasons, which was error. The fact that the error was later cured does not mean that it did not occur. Nevertheless, in the words of the Court of Military Appeals, "we are unable to discern any relief to which appellant might be entitled." *Id.*

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings on Charge I, conspiracy, and its sole specification are set aside and the Charge and Specification are dismissed. The remaining findings are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, those findings of guilty are affirmed. The sentence, as approved below, is affirmed.

Judges KENNEY and CHANEY concur.



For the Court,


Gail M. Reese
Deputy Clerk of the Court