# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Cory A. ARMITAGE
### Gunner's Mate Second Class (E-5), U.S. Coast Guard

## CGCMG 0385
### Docket No. 1478

## 12 September 2022

General court-martial sentenced adjudged on 28 May 2021.

| | |
|---|---|
| Military Judge: | CDR Paul R. Casey, USCG |
| Appellate Defense Counsel: | Mr. Philip D. Cave, Esq. |
| | CDR Jeffrey G. Janaro, USCG |
| Appellate Government Counsel: | LCDR Nicholas J. Hathaway, USCG |
| | LCDR Daniel P. Halsig, USCG |
| Special Victims' Counsel: | Mr. Paul T. Markland, Esq. |
| | LT Zachary N. Godsey, USCG |

## BEFORE
## McCLELLAND, BRUBAKER & HERMAN
Appellate Military Judges

McCLELLAND, Chief Judge:

A general court-martial of members including enlisted members convicted Appellant, contrary to his pleas, of one specification each of sexual assault and abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ). The court sentenced Appellant to a dishonorable discharge, reduction to E-1, hard labor without confinement for two months, and restriction for two months. The Convening Authority approved the sentence. Judgment was entered accordingly.

Before this Court, Appellant has assigned five errors (paraphrased):

(1) The evidence for the two specifications of which Appellant was found guilty is neither legally nor factually sufficient.

(2) The prosecutor erred by inserting himself into the argument to the members and by making improper statements concerning Appellant's failure to testify.

(3) Appellant's due process right to timely appellate review was violated.

(4) The military judge erred by giving the "Talkington" instruction to the members.[1]

(5) Article 52, UCMJ, is unconstitutional because it allows for non-unanimous findings of guilt. Failure to instruct the members that any finding of guilty requires a unanimous vote was error.

We reject the fourth and fifth assignments summarily and discuss the others. We find no error and affirm.

## Background

In late November 2019, Appellant and several members of the crew of USCGC *Monomoy*, in Bahrain, spent the evening together a few days before being transferred. A female member of the group, Boatswain's Mate First Class (BM1) H.L., became extremely intoxicated, to the point of vomiting, being unable to walk, and with impaired motor functions and speech. Appellant and two other members took BM1 H.L. to a hotel where one of them was staying, and they all stayed there for the night on one king-size bed. BM1 H.L. was lying on her side with her back to Appellant. During the night, Appellant pulled down BM1 H.L.'s pants and underwear and contacted her buttocks and groin with his hand. She pulled her pants and underwear back up. This happened twice. Later, he inserted two fingers into her vagina. She reached behind her and grabbed or swatted at him, and changed her position to lie on her back and cover her groin with her hands. She then went back to sleep for the rest of the night.

## Legal and Factual Sufficiency

Appellant contends that the evidence is insufficient to find that BM1 H.L. was "incapable of appraising the nature of the conduct at issue" or "physically incapable of declining participation in, or communicating unwillingness to engage in" the conduct, in the words of Article 120(g)(8).[2]

---

[1] *United States v. Talkington*, 73 M.J. 212 (C.A.A.F. 2014).
[2] Appellant also contends that the evidence was insufficient to find that Appellant knew or reasonably should have known of BM1 H.L.'s impairment.

Evidence is legally sufficient if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (cleaned up). Factual sufficiency requires that we, after weighing the evidence and making allowances for not having personally observed the witnesses, are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003) (citing *United States v. Turner*, 25 M.J. 324, 325 (C.A.A.F. 1987)). Our "review of findings—of guilt and innocence—[is] limited to the evidence presented at trial." *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (emphasis omitted).

In conjunction with his argument on factual sufficiency, Appellant has requested that we take judicial notice of several matters. Although appellate judicial notice is permitted under certain circumstances, s*ee United States v. Paul*, 73 M.J. 274, 280 (C.A.A.F. 2014), we decline to take judicial notice.

We conclude that the evidence presented at trial is legally sufficient, and we are convinced beyond a reasonable doubt of Appellant's guilt.

**Trial Counsel's Closing Argument**

Appellant argues that trial counsel committed prejudicial error during closing arguments, including vouching and commenting on Appellant's not testifying. Trial defense counsel did not object to the arguments.

In the absence of an objection, an issue of trial counsel's improper vouching and expressing personal opinions is reviewed for plain error. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)). "Plain error occurs when (1) there is error, (2) the error is clear or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* Reversal is required "when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (quoting *United States v. Hornback*, 73 M.J. 155, 160) (C.A.A.F.

2014)) (cleaned up); *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005). *Fletcher* provides factors to consider: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction. 62 M.J. at 184.

During his closing argument, trial counsel asserted "We know …" eight times. R. at 968, 974, 976, 977, 980. However, these assertions were not accompanied by assertions that a witness was correct or to be believed. None of these instances overtly vouches for testimony. *See* Rule for Courts-Martial 919 Discussion ("In argument, counsel may treat the testimony of witnesses as conclusively establishing the facts related by the witnesses."). During his rebuttal argument, he used "I view" (referring to a photograph in evidence) and "I believe" when responding to defense closing argument. R. at 997. Even if considered to be offering trial counsel's opinion, these two instances are insignificant and do not rise to the level of error, much less plain error.

This case is very far from the *Fletcher* case, in which the Court of Appeals for the Armed Forces found egregious "pronounced and persistent" misconduct far beyond mere vouching by trial counsel, 62 M.J. at 185, and the *Voorhees* case, where the Court found "grievous error" in extreme opinions and more, included in trial counsel's closing argument, 79 M.J. at 12. It does not even rise to the conduct in *United States v. Horn*, 9 M.J. 429, 430 (C.M.A. 1980), where trial counsel expressed his personal belief numerous times using the phrase "I think," in urging inferences to be drawn from the evidence and the weight to be given to various evidence. While the Court condemned the tone of the argument, it found no prejudice.

Trial counsel in this case did not commit significant errors of vouching or expressing his opinion or the like. Any error was not plain or obvious.

Trial counsel argued in rebuttal, "And we've only heard that this was a consensual encounter from the accused through his conversations with other people after the fact. Of course he's biased and can be seen trying to frame the narrative this way. No evidence supports this, from what we've proved in the courtroom." R. at 999 (cleaned up). Appellant now asserts that "[t]he prosecutor argues clearly to convict [Appellant] because he didn't testify or produce supporting evidence of his out-of-court statements during trial." Appellant's Br. at 37.

Trial counsel's argument was a direct rebuttal to the defense closing argument that the encounter was consensual. Trial counsel did not explicitly call attention to Appellant's failure to testify, but simply asserted that there was "no evidence" to support the defense argument. Thus, trial counsel made only an oblique reference to the failure to testify, not a clear argument to convict because Appellant did not testify or produce evidence, as Appellant claims.

Prosecutorial comments must be examined in context. *United States v. Haney*, 64 M.J. 101, 104 (C.A.A.F. 2006) (citing *United States v. Robinson*, 485 U.S. 25, 33 (1988) and *Lockett v. Ohio*, 438 U.S. 586, 595 (1978)); *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citing *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000)). There is no violation of the privilege against self-incrimination where the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by the defense. *United States v. Robinson*, 485 U.S. 25, 33 (1988). We hold that trial counsel's argument was a fair response to the defense argument.

Appellant also complains that during his sentencing argument, trial counsel offered his opinions, and argued facts not in evidence. The opinions were in conjunction with his recommendations against restriction and reprimand, and in favor of several years of confinement. Even if error, these opinions were harmless, given that Appellant was not sentenced to confinement. Likewise, the alleged facts not in evidence pertained to confinement conditions; they were harmless.

**Post-Trial Delay**

Appellant asserts that the 125 days between the convening authority's action and docketing of the case with this Court was presumptively unreasonable under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006) because it exceeded thirty days, and deprived him of his right to speedy post-trial review. We apply the conclusion we reached in *United States v. Tucker*, 82 M.J. 553, 570 (C.G. Ct. Crim. App. 2022): that *Moreno*'s use of the convening authority's action as a terminal benchmark prior to docketing has been superseded by statute and regulation. As in *Tucker*, there was no presumptively unreasonable delay in this case. Further, even under a full due-process analysis, Appellant was not deprived of due process.

Briefly, under the new post-trial regime, whereas in the past the convening authority's action was the last event before a record of trial was forwarded for appellate review, under the Military Justice Act of 2016 (MJA 2016),[3] the opportunity for the convening authority to take action is followed by the entry of judgment, which "terminates the trial proceedings and initiates the appellate process." Rule for Courts-Martial (R.C.M.) 1111(a)(2). Thereafter, further administrative processing might take significant time, especially if the transcript was not completed before the entry of judgment.[4]

Accordingly, we apply a presumption of unreasonable delay triggering a full due-process analysis when: (1) the record of trial is not docketed with this Court within a total of 150 days of the completion of trial; or (2) we do not complete appellate review and render a decision within eighteen months of docketing. *Tucker*, 82 M.J. at 570.

Here, although more than thirty days elapsed between the convening authority's action and docketing with this Court, a total of 150 days elapsed between completion of the trial and docketing. Accordingly, there was no presumptively unreasonable delay.

Alternatively, even if there was presumptively unreasonable delay, there still was no due process violation and relief is not warranted.

The full due-process analysis, called for upon presumptively unreasonable delay, comprises consideration of the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo,* 407 U.S. 514, 530 (1972)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136. If we conclude there was a due process violation, we must grant relief unless

---

[3] The alleged offenses in this case occurred after 1 January 2019, the date when the Military Justice Act of 2016 took effect, per E.O. 13825 (March 1, 2018).

[4] The Coast Guard Military Justice Manual (MJM) (COMDTINST 5810.1H) (9 July 2021) calls for the transcript to be completed within thirty days of adjournment of the court-martial. MJM subsection 21.E.5. (This provision is unchanged from the previous edition of the MJM.) That time standard was not met in this case.

we are convinced beyond a reasonable doubt that the error is harmless. *United States v. Toohey*, 63 M.J. 353, 363 (C.A.A.F. 2006).

The record shows the following sequence of post-trial events:

| Date | Event | Days elapsed |
|------|-------|:---:|
| 28 May 21 | Sentence adjudged | 0 |
| 22 June 21 | Convening authority signed | 25 |
| 15 July 21 | Entry of Judgment | 48 |
| 27 Sep 21 | Transcriptionist's certification | 122 |
| 01 Oct 21 | Court reporter's certification of ROT | 125 |
| 05 Oct 21 | Military Judge's verification | 130 |
| 25 Oct 21 | Docketing at CGCCA | 150 |

The length of the delay—125 days between the convening authority's action and docketing—favors Appellant, but there were many steps required and hence sound reasons for taking more than thirty days under the restructured post-trial process of MJA 2016. Further, Appellant did not assert the right to speedy post-trial processing until filing his appellate brief, which weighs against him. Also, importantly, Appellant has provided no evidence of cognizable prejudice as a result of the 125 days it took from convening authority's action to docketing, and we discern none—particularly in light of the case being docketed within the overall timeframe of 150 days envisioned by *Moreno*. Finally, there is little indication of dilatory processing or lack of institutional diligence, and relief is not warranted under Article 66(d)(2), UCMJ and *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002).

### Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges BRUBAKER and HERMAN concur.



For the Court,

Sarah P. Valdes
Clerk of the Court